26-C -212

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2026 FEB -9 A 9:00

CLERK OF COURT

CASE No.

## Complaint and Petition for Relief Under Civil RICO

Katherine Lou Hobbins Forester,

Plaintiff,

v.

Waukesha County; Waukesha County District Attorney's Office;
Daniel J. Tombasco, In his Individual and Official Capacity;
Alyssa M. Schaller, In his Individual and Official Capacity;
Jason L. Church, In his Individual and Official Capacity;
JJ Crawford, In his Individual and Official Capacity;
Andrew Meining, acting Assistant District Attorney, In his Individual and
Official Capacity; Marquette University; Unknown Supervising Attorney for
Andrew Meininger; Ryan T. Roeglin, In his Individual and Official Capacity;
Demetra Christopoulos, Waukesha County Corporate Counsel
 Pamela Reeves, Waukesha County Treasurer; Christopher Bailey,
Commissioner, in his personal and Official Capacity;  Daniel Rieck,
Commissioner, in his personal and Official Capacity; Lesli S. Boese, District
Attorney, In her personal and Official Capacity;
Margaret Wartman, county clerk and fiscal agent, in her personal and
official capacity; Eric J. Severson, County Sheriff, in his Personal and Official
Capacity; ennifer Grant, Waukesha County Treasurer, in her personal and
Official Capacity, Officers: McIntyre, Niles, Kubashek, Johnson, Bell, Salberg,
Matuzak, Schramberg Kowalski, Jensen, Kierns, Verge, Lizzy, Karwowski,
Markov, Harlan, Krieger, Burke, Marshall, Unit 9218, Unit 9101 In their
personal and Official Capacity
and John and Jane Doe;

Defendants,

Wisconsin Retirement System (WRS);
State of Wisconsin Investment Board (SWIB);
Piper Sandler & Co.;
Robert W. Baird & Co., Incorporated;
Quarles & Brady LLP ,
Depository Trust Company & Clearing (DTCC);
National Securities Clearing Corporation (NSCC),

Relief Defendants.

## Parties

<u>Plaintiff:</u>

Kathrine Lou Hobbins Forester

<u>Defendants:</u>

Waukesha County;
Waukesha County District Attorney's Office;
Daniel J. Tombasco, In his Individual and Official Capacity;
Alyssa M. Schaller, In his Individual and Official Capacity;
Jason L. Church, In his Individual and Official Capacity;
JJ Crawford, In his Individual and Official Capacity;
Andrew Meining, In his Individual and Official Capacity;
Marquette University;
Unknown Supervising Attorney for Andrew Meininger;
Ryan T. Roeglin, In his Individual and Official Capacity;
Demetra Christopoulos, Waukesha County Corporate Counsel
 Pamela Reeves, Waukesha County Treasurer;
Christopher Bailey, Commissioner, in his personal and Official Capacity;
Daniel Rieck, Commissioner, in his personal and Official Capacity;
Lesli S. Boese, District Attorney, In her personal and Official Capacity;
Margaret Wartman, in her personal and official capacity;
Eric J. Severson, in his Personal and Official Capacity;
Jennifer Grant, in her personal and Official Capacity,

<u>Officers:</u>

McIntyre, Niles, Kubashek, Johnson, Bell, Salberg, Matuzak, Schramberg
Kowalski, Jensen, Kierns, Verge, Lizzy, Karwowski,  Markov, Harlan, Krieger,
Burke, Marshall, Unit 9218, Unit 9101,
In their Personal and Official Capacity
and John and Jane Doe;

<u>Relief Defendants:</u>

Wisconsin Retirement System (WRS);
State of Wisconsin Investment Board (SWIB);
Piper Sandler & Co.;
Robert W. Baird & Co., Incorporated;
Quarles & Brady LLP ,
Depository Trust Company & Clearing (DTCC);
National Securities Clearing Corporation (NSCC)

# COMPLAINT AND PETITION FOR RELIEF UNDER CIVIL RICO

## I. JURISDICTION AND VENUE

### A. Jurisdiction

1.     This Court has jurisdiction pursuant to 18 U.S.C. § 1964(a), "The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter";

2.     This Court has jurisdiction pursuant to 18 U.S.C. § 1964(c), "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court...";

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States;

4.     At all relevant times, Defendants' conduct constituted or affected interstate commerce within the meaning of 18 U.S.C. § 1962(c)and 18 U.S.C.  §1961(1), including but not limited to:

    a.   Obstruction of Justice;

    b.   Use of interstate transportation contractors;

    c.   Use of interstate banking and financial systems;

    d.   Use of interstate communications, electronic record systems, and data analytics;

    e.   Procurement, financing, and operation of electronic book entry

transfers, use of interstate transfer agents, administered, or data-processed across state lines.

B. Supplemental Jurisdiction

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over related claims arising under the Constitution and laws of the United States, including claims actionable under 42 U.S.C. § 1983, as such claims form part of the same case or controversy and arise from a common nucleus of operative facts involving the same enterprise, actors, and course of conduct.

C. Venue

6.      Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) because:

 a.   Defendants reside in this District; or

 b.   Defendants transact their affairs in this District; and

 c.   Substantial portions of the racketeering acts, enterprise decision-making, financial transactions, acts under color of law, investment programs, and data collection occurred in this District.

7.      Venue is further proper under 28 U.S.C. § 1391(b)(1), (2) because:

 a.   Defendants are residents of this District for venue purposes; and

 b.   A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

This Court is authorized to exercise personal jurisdiction over all Defendants pursuant to 18 U.S.C. § 1965(b), as the ends of justice may require nationwide service of process in order to adjudicate the full scope of the enterprise and its participants.

## II. INTRODUCTION

8.      Plaintiff brings this Civil action pursuant to 18 U.S.C. §§ 1961–1964, Racketeering, Influence and Corrupt Organization Act ("RICO") on an "As Applied" basis, alleging that Defendants conducted and participated in an enterprise through a pattern of racketeering activity.

9.      Plaintiff is seeking relief for injuries arising from Defendants' conduct of, and participation in, the affairs of a corrupt enterprise through a pattern of racketeering activity spanning from February 2023 through February 2026 (present day). Plaintiff hereby asserts that Defendants have engaged in a continuous and systematic scheme of exploitation, using Plaintiff as a financial asset line of accounting through the issuance of bonds, certificates, insurance policies,   anticipation notes, commercial paper in and affecting   interstate commerce   manipulation of judicial and administrative records to the injury of Business and Property.

10.      As set forth below, Defendants operated a continuous and coordinated scheme in which Plaintiff was subjected to Obstruction of Justice, Extortion, Tampering with Witnesses and documents, Omitting/Deleting of the record, prolonged detention, interstate trafficking/kidnaping (not in furtherance of a legitimate purpose), excessive and manipulated bond conditions, compelled participation in a scheme outside statutory authority, unconstitutional surveillance, and willful suppression and alteration of judicial and administrative

records.

11.    These acts were undertaken not as isolated abuses, but as part of an enterprise-level operation designed to generate revenue, preserve control, and prolong participation in programs and schemes in which the funds, proceeds and investment thereof are used for the direct benefit and enrichment of the Defendants, affiliated actors, agents and corporate entities. The United States Code, Statute and Law establishes grounds for relief from this activity under, inter alia, 18 U.S.C. §§ 1961-1964 (RICO ACT) in this civil action and necessitates this Court's intervention.

12.    As a direct result of Defendants' actions, Plaintiff has suffered significant injuries to both business and property including personal property injuries, loss of use of real property, loss of wages, emotional distress, mental anguish, physical injuries, and other financial and legal injuries, which injured Plaintiff's business and property as detailed throughout this complaint.

### III. CLAIMS FOR WHICH RELIEF CAN BE GRANTED

13.    Plaintiff incorporates by reference all facts referenced Complaint and Petition for Relief under Civil Rico. Plaintiff herein outlines a summary of events and actions which Defendants' management and participation forms a pattern of racketeering activity in furtherance of a corrupt Enterprise , including:

Wire Fraud/Fraudulent Acknowledgment:

14.    In October 2025, Waukesha County, Waukesha County Sheriff's Office and Waukesha County District Attorney's Office, by and through its agents employees

and law enforcement officers, used deception and omission to secure a Capias and cash Bond in furtherance of a Rico and coersion to secure Plaintiff's signature on a counterfeit and altered bond document. These instruments were used to justify Plaintiff's unlawful arrest, circumventing due process and in violation of 18 U.S. Code § 1343, Fraud by wire, in Pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses,  representations, or promises, transmits or causes to be transmitted by means of wire,  radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title …

Human Trafficking affecting interstate commerce:

15.   From December 23, 2025, to December 29, 2025, Plaintiff was trafficked  by Waukesha County, Waukesha County Sheriff's Office and Waukesha County District Attorneys Office affecting interstate commerce.

16.   These transports were not in furtherance of any legitimate government purpose but rather creating continuity under 18 U.S.C. § 1962(c).The said caused Plaintiff severe physical and emotional injury affecting Business and Property. See United States v. Kozminski, 487 U.S. 931, 948 (1988).

Hobbs Act

17.   In order to effect  and maintain continuity of a corrupt enterprise the Defendants, through wire fraud/deceit effectuated the home invasion and kidnaping of Plaintiff for the purpose of transporting Plaintiff in interstate commerce willfully in violation of 18 U.S. Code § 1201(a), in pertinent part:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps,

abducts, or carries away and holds for ransom or reward or otherwise any person...when—

(1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;

(c) If two or more persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.

## Obstruction of Justice

18.     In order to maintain continuity of a corrupt enterprise the Defendant

Andrew Meininger and Daniel Tombasco willfully omitted exculpatory evidence,

which constitutes the  obstructed of justice in violation of 18 U.S.C. § 1503 (a), in

pertinent part:

> ...or corruptly, ...influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice...

## Corrupt Influence

19.     In order to maintain continuity of a corrupt enterprise the Defendant

Daniel Tombasco willfully omitted exculpatory evidence constituting a

violation of the The Sarbanes-Oxley Act of 2002 as codified  in 18 U.S. Code §

1512(c)(1),(2) in pertinent part:

Whoever corruptly—

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned ...

20.    In order to maintain continuity of the corrupt enterprise the Defendants, under color of law and/or official capacity, in violation of 18 U.S. Code § 241, 242, knowingly, and with corrupt intent to influence the outcome of an official proceeding, took action, colluded or otherwise conspired to violate Plaintiff's constitutionally protected rights as established under

a. Brady v. Maryland, 373 U.S. 83, 87 (1963), in pertinent part:
...suppression of material evidence favorable to the accused violates due

process, and

b. Arizona v. Youngblood, 488 U.S. 51, 58 (1988), in pertinent part:
...bad faith for destruction of potentially exculpatory evidence to
constitute a constitutional violation.

Peonage, Involuntary Servitude & Forced Labor:

21.    Starting on September 2023 and continuing through February 2026, Defendant Christopher Bailey, Waukesha County, Andrew Meininger, ADA Daniel Tombasco  and others under color of law and/or color of official right compelled Plaintiff's  participation, under threat of imprisonment or other adverse punitive action.

22.    Defendants, by forcing Plaintiff in to bonds, allowed Defendants access to Waukesha County Special Revenue Funds pursuant to Wisconsin Statutes § 66.0603.

23.    In order to maintain continuity of revenue for the corrupt enterprise the Defendants willfully used a coordinated mechanism operated through the systematic imposition of cash bail in amounts exceeding those reasonably

necessary to assure appearance.

24.     In furtherance of a corrupt enterprise, liquid funds were predictably captured at the point of bail posting and transferred into custodial control, where they were aggregated into pooled public accounts while remaining nominally segregated. These pooled custodial balances were maintained in continuous circulation and placed into authorized short-term investment instruments, thereby converting temporarily held bond deposits into a recurring liquidity base.

25.     The corrupt enterprise functioned through repetition of this cycle of excessive bail imposition, custodial capture, aggregation, and temporary financial deployment, controlling monetary assets generated from the ongoing pattern of conduct, thereby sustaining its financial capacity and enterprise continuity.

26.     Peonage exists where an individual is held to compulsory service or compliance to liquidate an obligation, real or alleged, through the threat of legal sanction. Here, for the purpose of commingling excessive cash bonds with other resources and financing sources in the restrictive/special funds under their control, Defendants' imposition of excessive cash bond compulsion and its subsequent investments to compel payment constitutes  a condition of peonage in violation of § 1581.

27.     In order to maintain continuity of revenue for the corrupt enterprise the

Defendants willfully created a defacto policy to perpetuate financially driven court orders to create positions to exercise warrants in an otherwise legitimate national book entry system under DTCC and NSCC. The involuntary nature of this servitude is highlighted by the fact that Defendants' enforcement of these conditions was tied to unlawful debt conversion scheme that rewarded forced participation.

28.    By compelling Plaintiff's participation, Defendants ensured continued access to these revenue funds, thereby creating a structural incentive to maintain Plaintiff in a condition of enforced submission in violation of 18 U.S.C. § 1584 - Involuntary Servitude.

29.    These conditions exceeded constitutional and Statutory authority, Plaintiff's compliance and payments were obtained through the abuse and threatened abuse of legal process, expressly prohibited by 18 U.S.C. § 1589(a)(2), and were undertaken to secure financial benefit for Defendants through statutorily designated revenue streams.

30.    18 U.S.C. § 1589 prohibits schemes intended to cause a person to reasonably believe they have no viable alternative but to comply due to threatened legal harm.

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person

to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

### Financial Exploitation and Securities Creation:

31.     Waukesha County, through Wisconsin Retirement System (WRS), State of Wisconsin Investment Board (SWIB), Piper Sandler & Co., Robert W. Baird & Co., Incorporated. and Quarles & Brady LLP , have generated and comingled Millions in notes and commercial paper securitized schemes of compulsion including Plaintiff . These actions constitute financial exploitation for the enrichment of Waukesha County and its employees through a scheme in violation of constitutional protections.

### Judicial Misconduct:

32.     Waukesha County Defendants, among others, in order to further a corrupt enterprise, engaged in repeated acts that deprived Plaintiff of access to courts, manipulated statutory prerequisites, and enforced unconstitutional restrictions on Plaintiff's participation in legal proceedings. This resulted in the loss of significant assets, and injury to Business and Property.

### Furthering an Enterprise Through Prosecution

Plaintiff fully incorporates, by reference, all claims and causes of actions heretofore alleged as if stated herein.

33.      Defendants, Waukesha County District Attorney's Office, Christopher

Bailey, Andrew Meininger, Daniel Tombasco, Officers: McIntyre, Niles, Kubashek, Johnson, Bell, Salberg, Matuzak, Schramberg, Kowalski, Jensen, Kierns, Verge, Lizzy, Karwowski, Markov, Harlan, Krieger, Burke, Marshall, Unit 9218, Unit 9101, as well as unknown actors, by premeditation and collusion in furtherance of a corrupt enterprise facilitated a military-style invasion and attack on Plaintiffs property under the guise service of a Slander of Title arrest warrant and non-existence search warrant.

34. Defendants, Officers: McIntyre, Niles, Kubashek, Johnson, Bell, Salberg, Matuzak, Schramberg, Kowalski, Jensen, Kierns, Verge, Lizzy, Karwowski, Markov, Harlan, Krieger, Burke, Marshall, Unit 9218, Unit 9101, as well as unknown actors, either directly or indirectly, while brandishing assault-style weapons, used a fake search warrant scheme to enter and ransack Plaintiff's home in search of Guns and Cash in violation of 18 U.S. Code § 1951, commonly known as Hobbs Act Robbery.

35. Defendants, Officers: McIntyre, Niles, Kubashek, Johnson, Bell, Salberg, Matuzak, Schramberg, Kowalski, Jensen, Kierns, Verge, Lizzy, Karwowski, Markov, Harlan, Krieger, Burke, Marshall, Unit 9218, Unit 9101 perpetually recited "1032" (man with a Gun) over a communication facility in an attempt to justify their scheme. This pattern of recitation without valid justification show a premeditative nature of the Defendant's scheme.

36. Defendants, Officers: McIntyre, Niles, Kubashek, Johnson, Bell, Salberg, Matuzak, Schramberg, Kowalski, Jensen, Kierns, Verge, Lizzy, Karwowski, Markov, Harlan, Krieger, Burke, Marshall, Unit 9218, Unit 9101 individually and

through the collective knowledge doctrine, knew or should have known that an armed home invasion under the guise of a fake search warrant never served a legitimate government purpose. Defendant by and Through K9 unit facilitated 3 K9 attacks on Plaintiff severing Plaintiff's collar bone and ripping Plaintiff's flesh shoulder muscles activities prohibited under 18 U.S.C. § 1962(a),(b),(c),(d) and 18 U.S. Code § 1951

37.     Waukesha County Defendants conducted and participated in the enterprise's affairs through a pattern of racketeering activity, including forced labor (18 U.S.C. § 1589), involuntary servitude (18 U.S.C. § 1584), and obstruction of justice (18 U.S.C. § 1512(c)(1). Plaintiff was injured in business or property by reason of Defendants' racketeering conduct.

38. All foregoing claim herein included by reference satisfying both pattern and continuity under 18 U.S.C. § 1962(c).

## IV. WAIVER OF IMMUNITY BY DEFENDANTS

39.     Defendants have waived immunity in multiple ways as follows;

      A.     Commercial Transactions and Corporate Financial Practices:

40.     By engaging in commercial banking and securities transactions through Underwriting, Trading in Financial Instruments, through DTC, DTCC, NSCC, SWIB and WRS, Defendants have waived governmental immunity under People v. Ortiz and Hale v. Henkel, 201 U.S. 43 (1906). These cases establish that when government entities participate in the private sector, particularly through

securities trading and commercial financial transactions, immunity is waived, subjecting them to civil liability.

Use of Profits (surplus) for Securities investment<br>and Direct Benefit to Officials:

41.     Defendant's Profits (surplus funds), derived from public charges and maintained in commercial accounts, are managed by Commercial Banks and the underwriters and transfer agents by and through the DTCC, with proceeds transferred to SWIB and WRS.  Funds transferred to SWIB and WRS are used to purchase voting shares and other securities investments, which directly benefit Defendants. This financial interest and direct benefit to Defendants constitute an express waiver of immunity, as recognized by Ex parte Young, 209 U.S. 123 (1908), and Owen v. City of Independence, 445 U.S. 622 (1980).

Additional Waiver by Corporate Structure and WRS Benefits:

42.     Wisconsin Retirement System (WRS) and The State of Wisconsin Investment Board (SWIB) manages retirement assets for state and county employees, investing in a diversified portfolio including domestic and international stocks. This arrangement allows Waukesha County to fund retirement benefits and increase investment returns directly linked to public charges. Such alignment with private investment principles results in a waiver of immunity, consistent with City of Lafayette v. Louisiana P&L Co. | 435 U.S. 389 (1978).

**V. YOUNGER ABSTENTION IS EXCEPTED**

43.    Plaintiff respectfully submits that Younger abstention should not apply in this case due to the extraordinary circumstances surrounding Defendants' actions, which demonstrate bad faith prosecution, intentional harassment, and irreparable harm. Under Younger v. Harris, 401 U.S. 37 (1971), and subsequent decisions, federal courts have acknowledged exceptions to abstention principles where there is clear evidence of bad faith, harassment, or other extraordinary circumstances. Hobbs Act Robbery and Home Invasion should constitute that exception

Bad Faith and Harassment by Defendants:

44.    The Supreme Court recognized that bad faith prosecution and harassment by state officials justify federal intervention (Dombrowski v. Pfister, 380 U.S. 479 (1965)). Courts have similarly held that when state actions are undertaken for improper purposes, such as targeting individuals without legitimate governmental purposes, federal courts may intervene.

45.    Here, Plaintiff alleges that Defendants engaged in a calculated scheme involving civil and criminal processes not for legitimate prosecutorial purposes, but rather as part of a racketeering scheme under RICO. Specific actions, as heretofore stated, show a pattern of bad faith activity outside the bounds of legitimate state interests.

46.    Moreover, federal intervention is warranted where state actions reflect a clear intent to use judicial processes as a means of harassment. The Armed home invasion, the resulting serious bodily injury, and omission of exculpatory

evidence all support an exception under Younger for harassment.

Irreparable Harm Due to Physical, Mental, and Financial Injuries:

47.    The irreparable harm exception to Younger abstention permits federal intervention where a plaintiff faces significant harm to attached Property that state processes cannot adequately prevent or remedy. As defined in Trainor v. Hernandez, 431 U.S. 434 (1977), this exception applies where constitutional rights are at risk of substantial and immediate injury.

48.    Plaintiff's injuries, including permanent physical damage from three K9 attacks, emotional distress, mental anguish, loss of quality of life, loss of real property and financial exploitation constitute irreparable harm.

49.    Due to the alleged systematic abuse by Defendants and the intentional K9 Assaults, manipulation of state processes to deprive Plaintiff of relief, these harms are not adequately addressable within state courts. Further, in Younger, the Supreme Court acknowledged that abstention does not apply if the ongoing state actions are wholly inadequate to prevent irreparable harm to constitutional rights. The armed home invasion, intentional Omission of Statutory prerequisites, the callus disregard Plaintiff's rights, all substantiate the need for federal intervention to prevent further irreparable harm to Plaintiff.

**WHEREFORE**, Given the demonstrated bad faith, harassment, serious bodily injury, irreparable harm, and inadequacy of state court remedies, Plaintiff respectfully submits that an exception to Younger abstention is warranted in this

case. Federal intervention is necessary to address the ongoing and severe deprivations of Plaintiff's constitutionally protected rights and to prevent further irreparable injury.

## VI. PUNITIVE DAMAGES ARE PROPER on an "As Applied" BASIS

51.    Plaintiff respectfully requests that this Court consider punitive damages in this case based on an "as-applied" basis, which seeks relief exclusively for Plaintiff without direct fiscal impact on the public or innocent taxpayers. As described below, any punitive damages awarded will target only specific conduits and assets from which Defendants directly benefitted, rather than imposing a burden on taxpayers.

### Direct Accountability Through Investment Conduits and Laundered Benefits:

52.    Evidence indicates that Defendants engaged in misconduct through various investment conduits that enabled them to launder proceeds and personally benefit from the alleged racketeering scheme. Plaintiff asserts that these conduits operate as investment portfolios, employee benefit systems, and accounts tied to Waukesha County's profits (surplus funds). Funds transferred to entities like the Wisconsin Retirement System,  State of Wisconsin Investment Board and Book Entry Security Deposits, provide direct financial returns to Defendants and other bad actors in the form of voting shares, securities, and other investment returns. Awarding punitive damages to Plaintiff would specifically target these benefits without any direct impact on the taxpayers.

53.    Punitive damages are thus proper because they would apply to assets that Defendants misappropriated or secured through public financial schemes without the public's knowledge or consent. By focusing the punitive award on these entities and ensuring the relief targets WRS and WRS-linked assets and commercial account returns, this Honorable Court can deliver remedy for Plaintiff without involving innocent taxpayers.

Surety Bonds and Insurance Policies
Shield Innocent Taxpayers from Direct Impact:

54.    Additionally, surety bonds and insurance policies cover the actions of public officials in their capacities. Defendants, including county officials, judges, and district attorneys, court commissioners, and Clerks  operate under surety bonds and professional liability insurance that would fund any punitive damages awarded in this case. Surety bonds are legally required in this jurisdictions for public officials to ensure that any liability arising from abuse of authority, malicious prosecution, or constitutional violations is financially  covered.

55.    An award of punitive damages on an "as-applied" basis would thus leverage the investment conduits, surety and insurance funds, preserving taxpayer resources while holding the individual Defendants financially accountable. These financial backstops provide the intended purpose of insuring against misconduct and abuse of power, making them an appropriate source for satisfying punitive damages awarded to Plaintiff.

Personal Financial Liability of Defendants:

56. Punitive damages are additionally proper because they would target personal financial liability for the named Defendants, who acted in furtherance of a corrupt enterprise and with malicious intent to deprive Plaintiff of constitutionally protected rights. As the U.S. Supreme Court has held in cases such as Smith v. Wade, 461 U.S. 30 (1983), punitive damages are warranted when individuals act with "reckless or callous disregard for the plaintiff's rights." In this case, Defendants knowingly participated in a racketeering scheme for personal gain, repeatedly violating Plaintiff's rights without legitimate governmental purposes.

57. By holding Defendants personally liable for punitive damages, this Court would ensure that the specific wrongdoers are held accountable. Such damages would address the injuries inflicted on Plaintiff and Plaintiff's Property without placing an undue burden on legitimate county funds or innocent taxpayers.

**WHEREFORE**, In light of the foregoing, punitive damages are proper on an "as-applied" basis. By directing these damages toward the investment conduits, surety and insurance policies, and personal assets of Defendants, this Court can ensure that Plaintiff receives meaningful relief and that the wrongdoers bear the consequences of their actions. This approach avoids undue fiscal impact on innocent taxpayers, focusing accountability solely on the responsible actors and their financial assets.

## VIII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court:

**1.**     Find the continuity of Defendants actions demonstrate Racketeering Activity and Defendants' actions reveal its enterprise's way of doing business;

**2.**     Find that the Defendants' actions was in violation 18 U.S.C. §§ 1961–1964, Racketeering, Influence and Corrupt Organization Act ("RICO");

**3.**     Recovery of Business and Property, both real and personal, tangible and intangible, or the par value thereof;

**4.**     Recovery of all monies, securities, bonds, anticipation notes, and interest (or the par value thereof) to plaintiff or any of the said with nexus to Plaintiff, including all payments made to any party that allowed for, or benefitted from the continuity of Defendant's actions;

**5.**     Award compensatory, punitive damages, and treble damages, in an amount to be determined at trial, reflecting the injury sustained by Plaintiff;

**6.**     Issue an injunction and TRO, enjoining Defendants from furthering a corrupt Enterprise by and through the exploitation of Plaintiff;

**7.**     Order the disgorgement of profits (surplus funds) if this honorable finds it fit and proper.

**7.**     Award Plaintiff's reasonable attorney's fees and costs incurred in this action;

**8.**     Grant such and other relief that the Court deems equitable, just and proper.

### IX. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

 Respectfully submitted,

Dated: 2/9/2026

Katherine Lou Hudkins Forester
1356 Capitol Dr 700-141
Pewaukee WI 53072
414.322.6464